The next case on our calendar is Zhou versus State University of New York. Good morning. Good morning, Your Honours. May I please the court? Yes. My name is Susan Zhou. I'm a policy appellant in this case. In civil rights cases, often it is the poor, the weak, the powerless versus the rich, the strong, and the powerful. For me and countless others, our judicial system is the only place that can right the wrong, make the injured whole, and more importantly, to deter future civil rights violations. This is only because this court vacant the court's summary judgment decision, and my first counsel, the Honourable Ross Andrews, effectively impeached defendants' witnesses that the jury rendered verdict in my favour at the first trial. At the second trial, powerful defendants' appellees brought three new witnesses to lie for them under oath, which defendants did not and could not deny. The judgment was entered for defendants. The issue here is, given so many irregularities and enormous discord decisions, as mentioned in my brief, should a new trial be granted? I understand the bar for a new trial is high. The primary reason, if I may be honest, is the judicial economy, the costs. But the cost would be far, far greater if the poor, the powerless state in court is denied in this case. Let me give you an example. At SUNY Pali defendants' appellee, fraud has been pervasive. Professors with fake doctorate degrees, with fake authorship of peer-reviewed publications were not only not penalized, but also were awarded with accreditations and promotions. The president of powerful SUNY Pali, during the time that led to the second trial in this case, was convicted of wild fraud and sentenced to three and a half years in prison and a $100,000 fine. Those actions, those frauds, were not committed in secret often. And many employees know that, but very few speak out. The reason is not because they don't know the right from wrong, but because they are afraid. They are afraid of retaliation, afraid of adverse employment actions. Because when they talk to a lawyer, they look at their former employees, former colleagues, in my case. They look at it and say, the lawyer will tell them, no, you cannot win. You won't have a day in court. Because that's what I told them when I was first looking for counsel to represent me. I was told, hey, they are not going to give you personal files. You are no way to prove it. And that's the thing, that they are afraid. I'm not blaming them. But that's the cost to the society. Because it cost the college the professor's career, the president's career. It cost the professor's liberty. And more importantly, it cost public trust and confidence in our higher education system, which is supposed to educate youth and shape the future. So, Your Honors, the cost, if you think about the cost, I agree, I would think that if the cost is zero, you would grant the new child, because as long as they have arrows. But I think that, you know, when I just came up, another example is all the medias were waiting outside, and I was told because the victims of Epstein's case was in the trial, in the building. And if you think about it, all those few victims were pursuing justice a long time ago, but many of them didn't come forward, only after something happened. And you can think about this, lots of other victims in other sexual harassment cases, sexual assault cases, they did not speak out because they were afraid. So, because they don't think they can have a day in court, just like in my case, even if they did, it may take 10 years, as in my case, maybe more than 10 years to get justice. I thought the Sunni party was American college, but you have so many frauds. You have on the top, you have the president commit wire fraud at a center prison, and actually there's a student, just during the time of a second trial, who was committed a murder. Right now she's serving 25 years in state prison. I don't think that's a small college. It's not like, you know, it's only have 2,500 students, full-time students, and less than 100 full-time professors the time that I was there. Mr. Cho, you have five minutes, which have expired. Can you summarize finally what you want to tell us, bearing in mind that we've read the papers you've submitted? That's right. That's right. I mean, I hope you have some questions so that I can clarify certain things not clear in the brief. Well, if we have no questions, it means it was clear. Yeah, thank you. Thank you, yeah. But I think there's a misunderstanding by the respondent, apparently it's about after quite evidence during strashing, in which the so-called misconduct they claim was my failure to disclose poor teaching evaluations at the Brooksburg University during my job interview and misrepresentation during the application, the new application process. But that's the only intent. But actually during the strashing themselves, the so-called misconduct was changed to the poor teaching evaluations themselves. If I may, I can code this during strashing to see. Well, you don't have to read that. If it's in your papers, we've read it, we have it. So in conclusion, what do you want to tell us? I want to have just to have a new trial and a vacant judgment. Thank you. Thank you. The opposing party is submitting on their papers, so we won't have more argument. Thank you very much. Thank you. The last two cases on our calendar are on submission, so I will ask the clerk to adjourn.